**THIRD DIVISION**
**ELLINGTON, P. J.,**
**MCFADDEN AND PETERSON, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 14, 2016**

# In the Court of Appeals of Georgia

A15A2185. CLASSIC COMMERCIAL SERVICES, INC. v.     JE -105
    BALDWIN.

ELLINGTON, Presiding Judge.

Classic Commercial Services, Inc. sued defendant Robert Baldwin in the Superior Court of Gwinnett County and later served Baldwin with the summons and complaint at his residence in North Carolina. Baldwin moved to dismiss the complaint on the grounds that the superior court lacked personal jurisdiction. The trial court granted Baldwin's motion to dismiss, and Classic Commercial appeals. For the reasons set forth below, we vacate the trial court's order and remand the case with direction.

A defendant moving to dismiss for lack of personal jurisdiction bears the burden of proving the absence of jurisdiction. To meet that burden, the defendant may raise matters not contained in the pleadings. However,

when the outcome of the motion depends on unstipulated facts, it must be accompanied by supporting affidavits or citations to evidentiary material in the record. Further, to the extent that defendant's evidence controverts the allegations of the complaint, plaintiff may not rely on mere allegations, but must also submit supporting affidavits or documentary evidence. When examining and deciding jurisdictional issues on a motion to dismiss, a trial court has discretion to hear oral testimony or to decide the motion on the basis of affidavits and documentary evidence alone pursuant to OCGA § 9-11-43 (b).

(Citation and punctuation omitted.) *General Pump & Well, Inc. v. Miller*, 326 Ga. App. 546, 546-547 (757 SE2d 161) (2014).

We review the trial court's decision de novo. *American College Connection, Inc. v. Berkowitz*, 332 Ga. App. 867, 867 (775 SE2d 226) (2015). This court is in an equal position with the trial court to determine and examine the facts where, as here, the trial court ruled on the motion to dismiss solely on written evidentiary submissions.[1] Id. at 547. Accordingly, on appellate review, we "examine[] the facts under a non-deferential standard, [and] we resolve all disputed issues of fact in favor of the party asserting the existence of personal jurisdiction." (Citation and

---

[1] The trial court considered the parties' written arguments, through their motions, briefs, replies, and responses, and "all matters of record," which included Baldwin's two affidavits. The record does not show that the trial court held a hearing before issuing its ruling.

punctuation omitted.) *Lima Delta Co. v. Global Aerospace, Inc.*, 325 Ga. App. 76 (752 SE2d 135) (2013). See *Beasley v. Beasley*, 260 Ga. 419, 420 (396 SE2d 222) (1990).

So viewed, the evidence shows that on December 27, 2013, Classic Commercial filed a complaint against Baldwin in the Superior Court of Gwinnett County seeking to hold Baldwin liable for an unpaid default judgment that it had obtained against Piedmont Hotel Group, Inc. Classic Commercial sought to recover from Baldwin, the sole shareholder, director, and officer of Piedmont Hotel, under theories of piercing the corporate veil and fraudulent transfer.

On January 2, 2014, a sheriff's deputy unsuccessfully attempted to serve the complaint on Baldwin at his house in Suwanee, Georgia, which was then occupied by a tenant. A deputy was again unsuccessful in attempting service on Baldwin on April 29, 2014, at a house in Braselton, Georgia. The deputy spoke to a woman who represented that she and her husband owned the house, that "it was a short sale," and Baldwin did not live there. Baldwin was personally served in North Carolina on November 26, 2014.

In his answer and subsequent motion to dismiss, Baldwin contended that the complaint should be dismissed for lack of personal jurisdiction and that venue was

3

also improper in Gwinnett County. Baldwin argued that the superior court lacked personal jurisdiction over him because he had been a resident of North Carolina since January 2014, he owned no property in Georgia, he conducted no business in Georgia, and he had not been served with the summons and complaint in Georgia. These factual assertions were supported by Baldwin's first affidavit.

In his motion to dismiss, Baldwin asserted that the complaint was filed on April 14, 2014. In its response to the motion, Classic Commercial pointed out that the complaint was filed on December 27, 2013, and contended that, inasmuch as Baldwin's affidavit established that he moved to North Carolina from Georgia in 2014, the court necessarily had personal jurisdiction over Baldwin. Alternatively, Classic Commercial argued that Baldwin was subject to the court's jurisdiction under Georgia's Long-Arm Statute, OCGA § 9-10-91.

After receiving the response, Baldwin amended his motion to dismiss to acknowledge that the complaint was filed on December 27, 2013. He then supplemented his motion to dismiss with a second affidavit for the purpose of, as he explained in his supplemental brief, "clarifying the dates during which he was transitioning from the State of Georgia to the State of North Carolina." Baldwin averred in his second affidavit that his residential address was in North Carolina and

4

that he acquired the property in February 2013, began paying utilities on the property that same month, and began moving his belongings to North Carolina in May 2013. According to Baldwin, he had previously resided in Gwinnett County, Georgia in his home in Braselton, listed the house for sale in May 2013, and sold the house in March 2014. He owned a second Georgia property that was sold in June 2014. He "irregularly" returned from North Carolina to Georgia to check on the condition of the two properties while they were on sale. Further, according to Baldwin, Piedmont Hotels ceased operating in March 2013, and he was not employed by any business in Georgia after March 2013.

Upon consideration of the parties' written submissions, the trial court granted Baldwin's motion to dismiss. The trial court found that Baldwin was not a resident of the State of Georgia on the date that the action was filed. Alternatively, the trial court concluded that even if Baldwin were a resident of the State of Georgia when the complaint was filed, service of the complaint was not completed with reasonable diligence and within a reasonable time after the filing of suit.

1. Classic Commercial contends that the trial court erred in finding that Baldwin was not a resident of the State of Georgia on the date the complaint was filed. We agree. Whether Baldwin was a resident of the State of Georgia on the date

5

the complaint was filed is material to determining whether the Georgia courts had personal jurisdiction over Baldwin. For purposes of resolving "jurisdictional questions, a person's residence at the time of filing of suit is the determining factor . . . [if] followed by service within a reasonable time . . . ." *Franek v. Ray*, 239 Ga. 282, 285 (236 SE2d 629) (1977). See also OCGA § 9-11-3 (a) ("A civil action is commenced by filing a complaint with the court."); *Williams-East, Inc. v. Weeks*, 156 Ga. App. 861, 863 (4) (275 SE2d 801) (1981) ("The Georgia courts have repeatedly held that service or waiver is essential, but that when made it relates back to the date of filing, which establishes the date the action is commenced.") (citations and punctuation omitted). See generally *Watts v. Allstate Ins. Co.*, 214 Ga. App. 462, 463 (448 SE2d 55) (1994) ("Georgia courts may exercise jurisdiction over Georgia residents[.]"). Baldwin, who had the burden of showing that the court lacked personal jurisdiction over him, failed to show that he was not a resident of the State of Georgia at the time of the filing of the complaint.

The undisputed evidence, as shown by Baldwin's first affidavit, is that he lived "continuously" at his North Carolina residence "since January 2014," which fairly infers that he could not have then resided in Georgia. But January 2014 was after the filing of the complaint, and Baldwin's first affidavit says nothing about whether he

6

was a resident of Georgia on December 27, 2013. And Baldwin's second affidavit does not answer that question. According to his testimony, after Baldwin acquired his North Carolina property in February 2013 he "began" moving his belongings, but he does not say when the move was completed. He avers that he listed his Georgia residence for sale in May 2013 and that the property was sold in March 2014, but not when he ceased to reside therein. And the wording of his first affidavit suggests that, as he continuously lived in North Carolina "since" January 2014, he did not continuously live in North Carolina before January 2014.

As a rule, "the testimony of a party who offers [himself] as a witness in [his] own behalf at trial is to be construed most strongly against [him] when it is self-contradictory, vague or equivocal." (Citation and punctuation omitted.) *Conrad v. Conrad*, 278 Ga. 107, 110 (597 SE2d 369) (2004) (citations and punctuation omitted). This principle applies in the context of a motion to dismiss on jurisdictional grounds. Id. While Baldwin's second affidavit appears to be carefully crafted not to be patently inconsistent with his first affidavit, it is vague and equivocal as to whether he remained a resident of Georgia when the complaint was filed. See *Chandler v. Gately*, 119 Ga. App. 513, 520 (3) (167 SE2d 697) (1969) ("Being peculiarly in a position to state fairly and definitely the facts which he professes to know, [a party

testifying in his own favor] is under a duty of so stating them as to give a candid and intelligible account of what occurred."). Baldwin did not show that he had left his residence in Georgia and completed his move to North Carolina before 2014, and he "retained his domicile and legal residence in [Gwinnett County] until he succeeded in acquiring residence and domicile in [North Carolina]." *Shirley v. State*, 1 Ga. App. 143, 145 (57 SE 912) (1907) (where grand juror had sold his lands in Rabun County where he had resided, with the intent of moving to Habersham County, and he had loaded his household goods on a train with the intent of sending them there, but remained in Rabun County to look after a sawmill and some cattle, and stayed in a hotel in Rabun County when court was in session, he remained a citizen of Rabun County at the time of his service as a juror). In view of the foregoing, Baldwin did not show, through his written submissions, that he was no longer a resident of Georgia when the complaint was filed, and the trial court erred in so finding.

2. In an alternate ruling, the trial court concluded that, even if Baldwin resided in Georgia on the date the complaint was filed, service was not completed with reasonable diligence and within a reasonable time after the filing of the suit. Classic Commercial contends that the timeliness of his service on Baldwin was not a sufficient ground to authorize dismissal of the action. Further, Classic Commercial

8

argues that, because the parties had not addressed the issue, the trial court should not have ruled without affording Classic Commercial an opportunity to come forward with evidence of its diligence in perfecting service on Baldwin. We agree with both arguments.

At the outset, we note that Baldwin did not contend that service was perfected on him in North Carolina after the statute of limitation had run, and it is readily apparent from the trial court's order that this was not the basis for its ruling. Thus, those cases in which, in order to avoid the bar of the statute of limitation, the relation back of the service to the date of filing of the complaint is dependent upon the diligence exercised by the plaintiff in perfecting service, are inapposite. See, e.g., *Moody v. Gilliam*, 281 Ga. App. 819, 820 (637 SE2d 759) (2006). The trial court relied, rather, on *Franek v. Ray*, a case in which, following their divorce, the mother of two minor children sued the father for change of custody in the Superior Court of DeKalb County, Georgia, but no service was had on the father at that time. 239 Ga. at 282. Following the filing of the petition, the father moved from Georgia to Texas where he was personally served over a year after the filing of the custody petition. Id. The Supreme Court noted that (as to the law that then applied), following a custody award, further custody proceedings must be brought in the county were the defendant

9

resides, and "[w]hen the parent awarded custody in Georgia moves to a foreign state, that state, and not Georgia, has jurisdiction over any new questions as to custody." (Citations omitted.) Id. at 283. The issue before the Court was whether, in determining residence for purposes of venue, courts should look to the residence of the defendant at the time a petition is filed in the clerk's office or at the time of service. Id. at 283-284.

The Court concluded that "for purposes of venue and other jurisdictional questions, a person's residence at the time of filing of suit is the determining factor." Id. at 285. However, the Court said, "filing is still not the commencement of suit unless followed by service within a reasonable time, but that once service is perfected upon a defendant it will relate back to the original date of the filing which will be considered the date of the commencement of the lawsuit." Id. at 285-286. The Court ultimately remanded the case to the trial court for determination of whether the mother "used due diligence and served the [father] within a reasonable period of time so as to preserve the pending suit." Id. at 286.

Although *Franek* addressed the issue of venue, its analysis is expressly relevant to "other jurisdictional questions." Id. at 285. And, under *Franek*, filing is not the commencement of suit if service is not made within a reasonable time. Thus, applying

10

the reasoning of *Franek* to the instant situation, if Classic Commercial had not served Baldwin in North Carolina within a reasonable period of time, Classic Commercial could not rely on Baldwin's residence in Georgia on the date of filing of the complaint to establish that the Georgia courts had personal jurisdiction over Baldwin. But here, unlike *Franek*, if service was not perfected within a reasonable time and so did not relate back to the original date of filing for jurisdictional and venue purposes, the action is not necessarily subject to dismissal.[2] In *Franek*, if the filing of the complaint was not the commencement of suit for venue purposes, then the custody action could not have proceeded in DeKalb County, or in Georgia, based on the Father's residence in Texas. In this case, however, Classic Commercial relied on Georgia's Long-Arm Statute, OCGA § 9-10-91, to show that the trial court had

---

[2] We unaware of any authority which has expressly applied *Franek* for the proposition that service *within* the statute of limitations, if not made within a reasonable time, is itself grounds for dismissal of an action. On the other hand, "[a] suit is unquestionably a valid 'pending action' if service has been perfected before the running of the applicable statute of limitations." *Ga. Farm Bureau Mut. Ins. Co. v. Kilgore*, 265 Ga. 836, 837 (462 SE2d 713) (1995). See also *Hilton v. Maddox, Bishop, Hayton Frame & Trim Contractors, Inc.,* 125 Ga. App. 423, 427 (1) (188 SE2d 167) (1972) (suit would be valid as a pending action upon which the plaintiff could proceed if, though late, service had been perfected before the running of the statute).

jurisdiction over Baldwin if he was not a Georgia resident,[3] and the determination of venue and personal jurisdiction thereunder would not require the trial court to conclude that service related back to the original date of filing of the complaint.[4] Thus, if service in North Carolina did not relate back to the time of the filing of the complaint for venue and jurisdictional purposes, the trial court should have considered Georgia's Long-Arm Statute before reaching a final determination that it

---

[3] We note that, unlike in *Shahan v. Scott*, 259 Ga. 172 (377 SE2d 859) (1989), Classic Commercial did not admit in its complaint that Baldwin was a resident of the State of Georgia, such that it could not rely on the Long-Arm Statute, nor did Baldwin contend that he was improperly served with process.

[4] A "nonresident" for purposes of the Long-Arm Statute, includes "an individual . . . who, at the time a claim or cause of action arises under Code Section 9-10-91, was residing [or] domiciled . . . in this state and subsequently becomes a resident [or] domiciled . . . outside of this state *as of the date of perfection of service of process* as provided by Code Section 9-10-94." (Emphasis supplied.) OCGA § 9-10-90. Thus, the trial court would not need to look to the date of filing of the complaint to determine that Baldwin was a nonresident for purposes of the Long-Arm Statute. See *Oglesby v. Deal*, 311 Ga. App. 622, 624 (1) (716 SE2d 749) (2011) ("Because the long arm statute defines 'nonresident' in the disjunctive, either a change in residence or change in domicile would suffice to make a person a nonresident.") (citation and punctuation omitted); *Bailey v. Hall*, 199 Ga. App. 602, 603-604 (1) (405 SE2d 579) (1991). Georgia courts may exercise personal jurisdiction over a nonresident "as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section." OCGA § 9-10-91. Venue lies "in any county wherein a substantial part of the business was transacted, the tortious act, omission, or injury occurred, or the real property is located." OCGA § 9-10-93.

lacked jurisdiction over Baldwin.[5] As the trial court did not, its dismissal of the complaint was premature.

In addition, as Classic Commercial points out, the parties did not address the issue of whether it used due diligence and served Baldwin within a reasonable period of time. Pretermitting whether the trial court acted properly in reaching the issue sua sponte, as it remains relevant to whether Baldwin was or was not a Georgia resident for purposes of this action, its findings were not, as we concluded supra, an appropriate basis for dismissing the case without consideration of whether the Georgia courts had long-arm jurisdiction. Compare *Kelley v. Lymon*, 279 Ga. App. 849, 850 (1) (632 SE2d 734) (2006) ("A trial court has the inherent power to dismiss a case sua sponte where appropriate.") (citations omitted). Nor, in the absence of a claim that service was made beyond the statute of limitations, can we conclude that Classic Commercial was put on notice that it must carry the burden of showing its diligence in perfecting service lest its claim be dismissed. Compare *Robinson v. Boyd*, 288 Ga. 53, 55 (2) (701 SE2d 165) (2010) ("Where service occurs after the statute of

---

[5] The same reasoning would apply to the trial court's initial determination that Baldwin was not a Georgia resident at the time of filing of the complaint. That finding did not resolve whether the Georgia courts nevertheless had personal jurisdiction over Baldwin under the Long-Arm Statute.

13

limitation has run, plaintiffs bear the additional burden of showing the exercise of due diligence in serving the defendants.") (citation omitted); *Farahi v. Jordan*, 238 Ga. App. 63, 64 (517 SE2d 803) (1999) (Because service of process was perfected after the statute of limitation had passed, plaintiff was required to show he acted reasonably and diligently in attempting to serve defendant as quickly as possible, and, in absence of such a showing, "he would be guilty of laches and service would not relate back to the filing of the complaint."). We find, therefore, that the trial court acted prematurely in ruling on the question of whether Classic Commercial exercised diligence in serving Baldwin without affording Classic Commercial an opportunity to present evidence addressing its diligence in attempting to serve Baldwin within a reasonable time.

3. Lastly, Classic Commercial contends that the trial court erred in granting Baldwin's motion to dismiss because Baldwin was subject to Georgia's Long-Arm Statute, OCGA § 9-10-91, which sets forth the conditions under which "[a] court of this state may exercise personal jurisdiction over any nonresident." However, as we noted above, the trial court did not rule on this issue, and it is therefore not ripe for appellate review. See *In re Estate of Belcher*, 299 Ga. App. 432, 439 (2) (b) (682 SE2d 581) (2009).

14

In view of the foregoing, we vacate the judgment of the trial court and remand for proceedings consistent with this opinion.

*Judgment vacated and remanded with direction. McFadden, J., concurs. Peterson, J., concurs fully and specially.*

A15A2185.   CLASSIC   COMMERCIAL   SERVICES,   INC.   v.   JE-105
    BALDWIN


PETERSON, Judge, concurring fully and specially.

I concur fully in the majority opinion, but write separately to make explicit something I think implicit in that opinion. The full text of judicial decisions is not law. Only the holdings of judicial decisions are law. *See Natson v. United States*, 494 Fed. Appx. 3, 5 n.2 (11th Cir. 2012) ("The opinions of the Supreme Court are not the United States Code. Every sentence in a Supreme Court opinion is not law. Only the holdings of Supreme Court decisions are law."). And a decision's holding is limited to the factual context of the case being decided and the issues that context necessarily raises. Language that sounds like a holding -- but actually exceeds the scope of the case's factual context -- is not a holding no matter how much it sounds like one. *See Watts v. BellSouth Telecomm., Inc.*, 316 F.3d 1203, 1207 (11th Cir. 2003) ("Whatever their opinions say, judicial decisions cannot make law beyond the facts of the cases in which those decisions are announced.").

Sometimes, careful definition of a decision's holding may seem unnecessarily pedantic. But the separation of powers requires it. The Georgia Constitution vests the legislative power in the General Assembly, Ga. Const. Art. III, Sec. II, Para. I.,

and demands that "[t]he legislative, judicial, and executive powers shall forever remain separate and distinct...." Ga. Const. Art. I, Sec. II, Para. III. When we afford legal authority to language in a judicial opinion that goes beyond the scope of the case being decided, we risk blurring the inviolate line separating the judicial power from the legislative.

The majority opinion discusses in detail a decision of our Supreme Court containing language that sounds like -- but is not -- a holding. In *Franek v. Ray*, 239 Ga. 282 (236 SE2d 629) (1977), the Supreme Court stated that "for purposes of venue and other jurisdictional questions, a person's residence at the time of filing of suit is the determining factor." *Id*. at 285. But venue was the only "jurisdictional question" before the *Franek* Court. *Id*. at 283. Accordingly, the added text "and other jurisdictional questions" is pure dicta, and the holding of *Franek* is limited to the principle that, "for purposes of venue ..., a person's residence at the time of filing of suit is the determining factor." Personal jurisdiction -- not venue -- is the issue here, and so *Franek* is merely persuasive -- not binding -- to the extent it is relevant. I concur fully in the majority's conclusion that the factual differences between this case and *Franek* warrant a different result.

2